[No. D004978. Fourth Dist., Div. One. Nov. 3, 1987.]

JOSEPH R. ABRAHAMSON, Plaintiff and Appellant, v. NME HOSPITALS, INC., Defendant and Respondent.

COUNSEL

Bruce Cornblum for Plaintiff and Appellant.

Dummit & Agajanian and Christopher J. Faber for Defendant and Respondent.

OPINION

BUTLER, Acting P. J.—A hospital contracted with a doctor to manage the laboratory and pathology department for the term of one year beginning July 1, 1983, and ending at midnight on June 30, 1984. The contract allowed either party to terminate the agreement without cause on giving 90 days notice. In June of 1984, the parties agreed to an extension of the contract and to continue to do business under the terms of the contract until a new contract was prepared for signature, "in no event later than November, 1984." November 30, 1984, the hospital served on the doctor a 90-day notice of termination without cause. The doctor continued working under the contract for the 90-day period, left and sued the hospital for breach of contract and for breach of the covenant of good faith and fair dealing. The court granted the hospital's motion for summary judgment and the doctor appeals. We affirm.

I

Joseph R. Abrahamson, M.D., Inc., a professional medical corporation whose sole shareholder is Joseph R. Abrahamson (collectively Abrahamson), as an independent contractor entered into an 11-page agreement with NME Hospitals, Inc., doing business under the name of San Diego

Physicians and Surgeons Hospital (hospital). Under the agreement, Abrahamson provided professional direction for the operation and management of the hospital's laboratory and pathology department (department). The agreement spelled out Abrahamson's duties and obligations to run the department in accordance with various standards and set out the hospital's obligation to Abrahamson and the term:

"VI. TERM AND TERMINATION

"A. This Agreement shall remain in effect for a term of one (1) year(s) beginning 7/1/83 and ending at midnight on 6/30/84, unless otherwise terminated as provided herein.

"B. Either party may terminate this agreement without cause upon ninety (90) days written notice to the other party and shall duly inform the Hospital's Governing Board of such termination.

"C. Hospital may terminate this Agreement upon one day's written notice to Pathologist in the event Pathologist or any Physician Employee:"[1] By an undated letter from the hospital, signed by both parties, the agreement was extended:

"This letter will serve as an extension of your contract which expires June 30, 1984. We will continue to do business under the terms of the contract until a new contract is prepared for signature, in no event later than November, 1984.

"Please acknowledge by signing a copy and returning it to me. Thank you." By letter dated November 30, 1984, the hospital gave the 90-day notice to Abrahamson:

"Dear Doctor Abrahamson:

"As per the terms of your contract, this letter serves as ninety (90) days notice of termination without cause.

"Respectfully,

"s/ Calvin K. Knight

"Calvin K. Knight

"Administrator"

---

[1] Twelve specific events authorize the one-day termination notice. As this subparagraph C is not involved in these proceedings, we do not list them here.

Abrahamson continued to work until February 28, 1985. He filed his first complaint February 6, 1985, and his first amended complaint August 27, 1985.

## II

Abrahamson pleads the agreement, the extension letter and the 90-day notice letter. He then pleads an oral agreement to the effect the parties would continue to do business under the terms of the agreement for the months after November 30, 1984, unless the agreement is terminated under paragraph VI B or C set out above.

Abrahamson pleads the hospital terminated the agreement because he would not condone or acquiesce in the hospital's failure to provide patient care and to require staff physicians to practice good medicine. He alleges the hospital did these things to increase revenue. Additionally, the hospital caused him to lose an election for chief of staff and caused him to be removed as chairman of the Utilization Committee. The complaint states the effect of these allegations: "The termination of plaintiffs' contract as referred to above and as extended by the parties described above, was in violation of the implied covenant of good faith and fair dealing contained in said contract. Implicit in the contract of the parties was the stipulation that the contract would not be terminated solely to prevent plaintiffs from assuring that defendant Hospital, and its staff, would deliver quality medical care within its hospital walls as required by law, public policy and contract of the parties. The sole reason for termination was defendants' desire to breach this implied covenant of good faith and fair dealing, which termination directly violated the express statutory objectives and contract referred to above. By virtue of same, defendants have acted in bad faith in causing this termination without cause referred to above."

Abrahamson contends his termination was contrary to public policy, is a nullity and he can only be terminated without cause for a lawful reason.

## III

█ We conclude the court correctly granted the hospital's motion for summary judgment. The agreement, as extended, provided for termination without cause upon giving a 90-day notice. Abrahamson does not contest this. The agreement was not breached by the hospital when it followed the termination procedures.

Abrahamson, while conceding the 90-day notice was given, argues the termination could be made only for "legal reason"; as he was terminated

because he charged the hospital with poor practices in the healing arts, the termination was wrongful. He relies upon cases involving the employment relationship. An at-will employee discharged for refusal to participate in illegal and unlawful acts may bring an action for wrongful discharge against the employer. (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 179 [164 Cal.Rptr. 839, 610 P.2d 1330].) *Tameny's* suggestion the discharge of an at-will employee in some circumstances might constitute a breach of the covenant of good faith and fair dealing (*id.* at p. 179, fn. 12) was picked up in *Cleary* v. *American Airlines, Inc.* (1980) 111 Cal.App.3d 443, 448-449 [168 Cal.Rptr. 722], and followed in *Khanna* v. *Microdata Corp.* (1985) 170 Cal.App.3d 250, 262 [215 Cal.Rptr. 860], and the cases cited in that opinion, and elaborated upon in *Koehrer* v. *Superior Court* (1986) 181 Cal.App.3d 1155, 1166 [226 Cal.Rptr. 820]. Discharge of an employee during the term of the employment contract may be a wrongful discharge if the employee pleads and proves the discharge was for a reason contravening fundamental principles of public policy (*Koehrer, supra,* at p. 1167). *Koehrer* discusses at length the distinction between a breach of the employment contract and a breach of the covenant of good faith and fair dealing and concludes: "In our view the standard developed in *Seaman's*[2] is appropriate to distinguish between the simple breach of an employment contract by discharge of the employee without good cause and a breach of the implied covenant of good faith and fair dealing affording tort remedies. If the employer merely disputes his liability under the contract by asserting in good faith and with probable cause that good cause existed for discharge, the implied covenant is not violated and the employer is not liable in tort. (*Seaman's, supra,* 36 Cal.3d at p. 770.) If, however, the existence of good cause for discharge is asserted by the employer without probable cause and in bad faith, that is, without a good faith belief that good cause for discharge in fact exists, the employer has tortiously attempted to deprive the employee of the benefits of the agreement, and an action for breach of the implied covenant of good faith and fair dealing will lie. [Citations.]" (*Koehrer, supra,* at pp. 1170-1171.)

These concepts concerning causes of action sounding in wrongful discharge and breach of the covenant arising out of the employment relationship are not on point. Abrahamson was engaged as an *independent contractor* for the term of one year under a contract terminable without cause on 90 days written notice. He was not an employee and was not discharged from employee status. Unlike the employment status involved in wrongful discharge cases, Abrahamson is in the position of the lessee of an oil station under a three-year lease in *Witt* v. *Union Oil Co.* (1979) 99 Cal.App.3d 435

[2]*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752 [206 Cal.Rptr. 354, 686 P.2d 1158].

[160 Cal.Rptr. 285]. There, Union Oil terminated the lease at the end of the three-year term. Dismissal of the lessee's complaint for wrongful termination, wrongful eviction, breach of the covenant and Cartwright Act violation was affirmed. The court remarked that acceptance of his argument would constitute a lease with a definite term with no right of renewal as a lease in perpetuity. (*Id*. at p. 438.) Here, if termination without cause could only be accomplished with cause, i.e., for reasons violative of public policy or law, the phrase "without cause" is effectively deleted from the agreement which then is terminable only for cause. Such interpretation of the clear, unambiguous "without cause"[3] term in the agreement rewrites the contract. (See *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d 752, 769.) Abrahamson's wrongful discharge claim is without merit.

We are unable to find Abrahamson's pleadings and declaration state requisite elements of a breach of the covenant. The parties agree the hospital terminated the contract without cause pursuant to provisions authorizing such termination. They agree the contract was in effect at the time of termination. The hospital did not assert in bad faith or otherwise the existence of good cause for termination. Indeed, the hospital and Abrahamson agree good cause was not the reason for the termination. To declare the existence of the covenant of good faith and fair dealing in these circumstances engrafts upon the agreement a requirement that the right of either party to terminate without cause upon 90 days notice the further condition the termination must be free of any suggestion of violation of fundamental public policy or of law. This we decline to do.

Judgment affirmed.

Todd, J., and Benke, J., concurred.

A petition for a rehearing was denied November 18, 1987.

---

[3] Our research has not disclosed and the parties do not cite to us any authority suggesting the phrase means other than its plain meaning.